BENJAMIN T. CASE, Plaintiff in error, who was Defendant below, *v.* UGENIOR CUSHMAN.

1. Where cross-interrogatories were filed after the fifteen days within which, under the rule of court, the opposite party was required to file them, but before the issuing of the commission, and it was refused to annex them thereto, it would be error to over-rule an objection to receiving the evidence taken under the commission, on the ground that the cross-interrogatories were not filed in time.
2. The statute of limitations in New York is not an available defence for one who had been beyond the jurisdiction of their courts, during the time which had elapsed. 3 Watts & Serg. 544. Aliter, if he was publicly and repeatedly in the state of New York, and six years elapsed after he was so in that state, before the commencement of suit against him.
3. No new promise during the six years would suspend the running of the statute, so as to make the date of the new promise a point of time from which another limitation would run.
4. Without some consideration, as long as the original obligation to pay is in force, such new promise is at most a mere nudum pactum.

ERROR to the Common Pleas of Susquehanna county.

This case was before this court at July term, 1842, and in the report of it, contained in 3 Watts & Serg. 544, may be found all its leading facts. What new evidence was adduced on the second trial, together with those particular portions of the charge of the court below, upon points proposed by the defendant, Mr. Case, which were made the subject of exceptions here, and the errors assigned, are so fully referred to in the opinion of this court as to render any farther report of those matters unnecessary.

*Williston*, for plaintiff in error, cited 2 Rev. Stat. N. Y. 295, et seq.; Fowler *v.* Hunt, 10 Johns. 463; Case *v.* Cushman, 3 Watts & Serg. 544.

*Richards*, for defendant in error, cited Adams *v.* Seitzinger, 1 Watts & Serg. 243.

*Greenough*, in reply.

The opinion of the court was delivered by KENNEDY, J.

The first error assigned is, that the court erred in admitting the deposition or testimony of James B. Gascoigne, taken under a commission, by a commissioner appointed for that purpose, in the city of New York. The rule for the commission in the court below was entered at the instance of the defendant in error, who was the plaintiff there, and a notice thereof, in due form, served on the attorney of the plaintiff in error, who was the defendant below, that he might file cross-interrogatories within fifteen days, according to the rule of the

court in that behalf, if he chose, to be annexed to the commission when taken out. Cross-interrogatories were not filed within the fifteen days, but were filed on the sixteenth day, while the prothonotary was engaged in making out the commission, and before it was near made out. The clerk or prothonotary, upon being requested by the defendant below to annex his cross-interrogatories to the commission, doubted whether it was not too late, but said he would advise the attorney below of it, and, if he would consent, he would annex them. He accordingly informed the attorney of the plaintiff below, that the defendant had that day filed cross-interrogatories, and requested that they should be annexed to the commission. The attorney for the plaintiff below said they were filed too late, and he would not consent that they should be annexed to it: for this reason they were not annexed, and the plaintiff below took out and had the commission executed without them. After it was returned and opened by the prothonotary, a second notice, according to another rule of the court, was given by the attorney of the plaintiff below to the attorney of the defendant there, of the commission's having been executed and returned to the prothonotary's office, that he might file his specification of exceptions thereto, if he had any, within twenty days. The objection to the reading of the testimony taken under the commission was, that the cross-interrogatories, filed in the prothonotary's office by the defendant, were not annexed to the commission, so as to be put to and answered by the witness. The second rule of the court below, referred to, and mentioned above, provides that "no exception to the admissibility of the evidence, so returned and filed, not included in such specification, (meaning exceptions,) shall be taken on the trial of the cause," &c. No exceptions, however, were filed by the defendant to the execution of the commission within twenty days after being notified of its execution and return into the prothonotary's office, nor indeed did any objection appear to have been made thereto by him until on the trial of the cause. It does not appear distinctly, either, upon what ground the court overruled the defendant's objection to the evidence being received,—whether it was because the first or second rule mentioned above, or both, had not been strictly complied with or observed by the defendant; but it is most probable it was because a compliance with the second rule had been altogether neglected by the defendant. For it would have been most obviously unjust to have allowed the plaintiff to have read the answers of the witness, taken under the commission, to his interrogatories, as the cross-interrogatories of the defendant were filed in time to have been annexed to it, so as to have been answered at the same time by the witness that he answered the interrogatories in chief. If the court

had overruled the defendant's objection upon the ground that the cross-interrogatories were not filed in due time, I would have said it was error; nor am I satisfied that it was right in the court to admit the evidence on account of the defendant's neglect to file a specification of his exceptions to the execution of the commission, under the second rule of the court, seeing the plaintiff's attorney wilfully, and without the least colour of just cause for doing so, refused to let the prothonotary annex a copy of the cross-interrogatories to the commission. It was taking an advantage of the defendant, which ought not to be sanctioned or tolerated by a court of justice. For illustration; take the case where the plaintiff, after declaration filed, enters a rule upon defendant to plead within a given time, or judgment. In such a case, no one ever supposed that the plaintiff could sign a judgment for want of a plea, after defendant had actually filed one, although not within the time specified in plaintiff's rule. It cannot be pretended that the plaintiff in such case is injured, or even delayed, in the slightest degree, by the neglect of the defendant to plead within the time allowed by the terms of the rule. For the plaintiff might have signed his judgment immediately after the time allowed for pleading had expired, before the plea was filed by the defendant or his attorney; but not having done so, it must be considered that he willed to give the defendant further time to plead, and the maxim is, non fit injuria volenti. The principle of this latter case, put by way of illustration, is directly applicable to the point in question.

The second error is an exception to the answer given by the court below to the defendant's first point, in which the court was requested to instruct the jury, "that the part of the demand then claimed by the plaintiff, as paid by him to C. & J. Gascoigne, which did not appear on the book of Ugenior Cushman & Co., nor on the invoice, it was the duty of the plaintiff to have made known to the defendant, when he entered into the covenant on which this suit is brought; and if said demand was not made known to him, the plaintiff ought not to recover that part of the demand, if entitled to recover any thing." The court, in answer to this point, did certainly instruct the jury that whether Mr. Case had a knowledge or not of Gascoigne's claim at the time he, Mr. Case, entered into the covenant, was a matter of fact to be determined by them, from the evidence; and, as there was evidence tending to show his knowledge of the claim at the time, it was proper that they should decide it; and, if they found that Mr. Case had a knowledge of Gascoigne's claim, his covenant would embrace it, otherwise not. This, we think, was a sufficient answer to the point, and given, too, by

the court, in terms that could not well be misapprehended by the jury.

The third and last error is an exception to the answer of the court given to the defendant's fourth point, whereby the defendant requested the court to instruct the jury, "that if they believed that Ugenior Cushman was publicly and repeatedly in New York after the account of Gascoigne & Co. had become due, and that six years elapsed after he was so in New York, before the commencement of the suit of Gascoigne & Co. against Cushman, then the plaintiff could not recover." The court, in answer to this point, instructed the jury, that if the account of Gascoigne was barred by the statute of limitations of New York at the time suit was brought there, the plaintiff could not then recover, and under the facts particularly stated in the point, the New York statute of limitations would bar the claim, though Mr. Cushman was a resident of this state; yet, when he went to New York after the account became due, then the right to sue would accrue, and six years after that time, if no suit was brought, or no new promise made, the claim would be barred. The court then asked, was there any new promise, or were there facts from which the jury might infer a new promise, or a distinct acknowledgment of the debt? A payment was made, as the court states, generally on account in February, 1832. This, the court say, would be a recognition of the debt, and in July, 1832, Cushman writes to Cushman & Falconer, with a request that the letter be shown to the Messrs. Gascoignes, which was done, according to the testimony of D. A. Cushman; and this will, if you believe it refers to the debt of the Gascoignes, now in dispute, be also a recognition of the debt, from which you may infer a new promise at that time, which was before the arrangement between Cushman and Case. And the court further proceeded to instruct the jury, that if the statute of limitations had been pleaded by the plaintiff in the suit brought against him in New York by J. & C. Gascoigne, the replication and proof made of this new promise, if it was made in 1832, as alleged, would have defeated the plea of the statute of limitations, unless it had been shown, that he had not been in the state of New York for a period of six years after making the new promise, and before the suit brought against him by J. & C. Gascoigne. So that if the new promise were made in 1832 by the plaintiff to J. & C. Gascoigne, to pay the debt owing by him to them; and if it were so, that he had not been in New York after that, and before the commencement of the suit by them against him, notice of that suit to Mr. Case would have been useless, if he had nothing to rely on as a defence to the action excepting the statute of limitations. We are of opinion that the court erred in thus charging the jury; for from the

evidence it appears distinct, that the debt owing by the plaintiff and his partners to the Gascoignes, which was a simple contract debt, created by a sale and delivery of goods by the latter to the former, charged merely in a book kept for that purpose, became payable on the 14th of the month of November, 1830; that after this, on the 20th of that same month, the plaintiff was in New York where the Gascoignes resided and done business, and purchased goods of Aaron Clark, a merchant of that place, as he testifies, and as James B. Gascoigne himself, one of the members of the firm of the Gascoignes, a witness on behalf of the plaintiff, testifies, was there again in July, 1831, and bought $94 worth of goods from them on his own private account. By the statute of limitations of the state of New York, " all actions of account, assumpsit, or on the case, founded on any contract or liability, express or implied, shall be commenced within six years next after the cause of action accrued, and not after." Then it is further provided, that " if at the time when any cause of action specified in this article shall accrue against any person who shall be out of this state, such action may be commenced within the terms herein respectively limited, after the return of such person into this state; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." Vide 2 Revised Statutes of New York, pp. 295, 296, and 297, art. 2, sec. 18, No. 4, and sec. 27. The cause of action which the Gascoignes had against the plaintiff accrued as early as the 14th of November, 1830, when the plaintiff was out of the state of New York, and resided in Pennsylvania, and therefore the statute did not commence running then, but on the 20th of that month, when the plaintiff returned to that state, or at least as early as July in the year following, when he was in the state, and it was known to the Gascoignes that he was there, the statute must be considered as having commenced running; and not being a resident of the state of New York then, but of Pennsylvania, the statute would continue to run notwithstanding his return shortly afterwards to his residence in Pennsylvania, and his not becoming a resident of New York until 1834. The plaintiff was not sued by the Gascoignes until January, 1840; so that not only six years, but upwards of eight, had elapsed from the time the statute first commenced running before the suit was commenced. And although it may be, that the plaintiff in 1831 or 1832 promised to pay the debt by annual instalments, or in 1833 acknowledged its existence, this would not, as the court below instructed the jury, give a new cause of action while the plaintiff was out of the state of New York, and suspend the running of the statute until he re-

turned into and became a resident thereof in the autumn of 1834, when the statute would begin to run again, and not before ; so that from this latter point the six years could not be said to have elapsed before the commencement of the suit in January, 1840, and, consequently, as the court told the jury, Mr. Case, if he had been notified of the suit having been commenced, could not have availed himself of the statute, as a bar to a recovery of the debt by the Gascoignes in that suit. In this we think the court erred ; for it is clear, that, according to the evidence, no such promise was made by the plaintiff to the Gascoignes subsequently to the commencement of the running of the statute in July, 1831, as would create any new cause of action, upon which the preexisting debt could have been recovered. The original promise and obligation to pay the debt continued to exist, and to be in full force, without being affected, in the slightest degree, by any new promise or acknowledgment that might have been made in 1832 or 1833, or at any time before the defendant had entered into the covenant or obligation upon which this suit is founded.* After that, it was not competent for the plaintiff to make any new promise to the Gascoignes in regard to the debt in question, that would alter or affect the rights of Mr. Case, or place his liability on any new or different ground, from that on which he had placed it himself by the terms of his agreement or covenant with the plaintiff. The debt was not barred by the statute at the time the new promise is alleged to have been made ; the plaintiff was still, and at that time, under a legal obligation to pay it, and without some consideration, which is not alleged or pretended, being given for the new promise, it was at most but a mere nudum pactum, and no cause of action could arise or accrue from it. The only cause of action, therefore, which existed, and had accrued, or could accrue, in regard to the debt in question, was founded upon the original promise and undertaking to pay it, and accrued on the 14th of November, 1830, against which the statute of limitations commenced running, at the latest, as early as the 28th of July, 1831, when the plaintiff was in New York and bought goods of the Gascoignes, when they might have sued him. If a debt be barred by the statute of limitations, or the debtor be discharged from it by a proceeding in bankruptcy, a new promise made afterwards by him to pay it has been considered binding, on the ground that he still was under a moral obligation to pay it, though discharged from all legal obligation, and being under a moral obligation, that formed a sufficient consideration in law to make the new promise binding. But as long as the original legal obligation to pay is in force, this principle will not apply.

The judgment is reversed, and a venire de novo awarded.

* The date of the covenant is January 13, 1834.—*Rep.*